UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | CAUSE NO. 3:20-CR-38 DRL-MGG |
| BRADLEY O'DONNELL, | |
| Defendant. | |

OPINION & ORDER

Bradley O'Donnell moved *pro se* for compassionate release or alternatively to serve the remainder of his sentence in home confinement. The government opposes his motion. The court denies his motion for home confinement because the Bureau of Prisons has exclusive authority to determine the location where an inmate serves his custodial sentence, including whether transfer from a secure facility to home confinement is appropriate. *See* 18 U.S.C. § 3621(b); *Tapia v. United States*, 564 U.S. 319, 331 (2011); *McKune v. Lile*, 536 U.S. 24, 39 (2002) (plurality).

Compassionate release is governed by 18 U.S.C. § 3582(c)(1), which says the court generally "may not modify a term of imprisonment once it has been imposed." One exception, argued here, is when "extraordinary and compelling reasons warrant" a reduction. 18 U.S.C. § 3582(c)(1)(A)(i). The commentary of U.S.S.G. § 1B1.13 provides guidance. *See United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020); *see also* U.S.S.G. § 1B1.13 app. n.1 (accounting for medical conditions, age, or family circumstances). Even then, release must satisfy the factors under 18 U.S.C. § 3553(a). *See* 18 U.S.C. § 3582(c)(1)(A); *United States v. Cochran*, 833 F. Appx. 5, 9 (7th Cir. 2020).

The court sentenced Mr. O'Donnell in September 2020 to 60 months for possession of a firearm in furtherance of a drug trafficking crime. *See* 18 U.S.C. § 924(c)(1)(A). This was the statutory minimum sentence. He has been continuously detained since April 20, 2020, meaning he has served a

little over 11 months of his sentence with time served. Though he says he doesn't have much time left to serve, he is scheduled for release on July 16, 2024—over three years from now. He is 28 years old. Mr. O'Donnell's motion fails on three grounds.

First, the government invoked the exhaustion requirement as an affirmative defense, and Mr. O'Donnell hasn't alleged or demonstrated that he "fully exhausted all administrative rights" within the BOP for compassionate release. *See* 18 U.S.C. § 3582(c)(1)(A); *United States v. Sanford*, 986 F.3d 779, 782 (7th Cir. 2021). The court must deny his motion on this ground.

Second, Mr. O'Donnell's circumstances are neither compelling nor extraordinary. He says he has two health issues warranting compassionate release: hepatitis C and obesity. The CDC says individuals with hepatitis C might be at an increased risk for severe illness from COVID-19, though it stops short of saying these individuals are definitively at increased risk.[1] The CDC says people with hepatitis C are more likely to have severe illness if their medical condition isn't well controlled. The CDC recommends continuing treatment for hepatitis C, and the BOP is equipped for this.

The presentence report says Mr. O'Donnell is 5'10" and 265 pounds—thus translating to a body mass index of 38. This BMI qualifies as obese. Though obesity makes it more likely for one to get severely ill from COVID-19,[2] statistics show a vast majority of inmates are obese. Based on statistics alone, obesity is a more common condition than an extraordinary one, and the BOP is equipped to deal with commonplace medical conditions like this.

Even if Mr. O'Donnell referenced in his motion his gastroesophageal reflux disease—which he didn't—his condition still wouldn't be compelling or extraordinary. The CDC doesn't mention this disease as at-risk for COVID-19, and the court sees no reason to depart from its previous finding that

---

[1] https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/liver-disease.html

[2] https://www.cdc.gov/obesity/data/obesity-and-covid-19.html

this disease isn't compelling for purposes of early release. His young age also helps mitigate the risk these health conditions might otherwise pose.

Though he says the BOP hasn't adequately cared for him, he doesn't present any evidence supporting this claim. This isn't perceived just as an oversight. The court considered his conditions both prior to sentencing (*see* ECF 23 (applying 18 U.S.C. §§ 3143 & 3145)) and at sentencing (ECF 31 at 3-4) and likewise found that his medical conditions weren't extraordinary, citing U.S.S.G. § 5H1.4, *see also* 18 U.S.C. § 3553(a)(5), and instead ones that the BOP had the tools to address. On this record, the court can't say the BOP hasn't adequately cared for him, and Mr. O'Donnell carries the burden in making this showing. *United States v. Matchette*, 2021 U.S. Dist. LEXIS 38649, 6 (N.D. Ind. Mar. 1, 2021). Mr. O'Donnell's situation is neither extraordinary nor compelling.

The risk of contracting COVID-19 exists everywhere. Mr. O'Donnell resides at FCI Milan, which houses approximately 1,276 inmates.[3] The BOP has vaccinated 51 inmates there along with 143 staff members, with the number trending upward as time progresses.[4] Neither party said whether Mr. O'Donnell has been vaccinated. COVID-19 deaths have been tragically high, but the pandemic has trended downward for some time while the number of vaccinations trends upward, even being watchful of additional strains and developments of late. Today almost a dozen vaccines have been approved around the globe, with about seventy more in the pipeline. At least three are in use in the United States. Rising inoculations among inmates precipitously mitigate any risk he has at the facility.

There are no active COVID-19 cases among the inmates at FCI Milan and only two confirmed cases among staff members.[5] Mr. O'Donnell's risk of being infected with COVID-19 in the facility remains low, especially contrasted with the number of infections in the general public. The BOP

---

[3] https://www.bop.gov/locations/institutions/mil/

[4] https://www.bop.gov/coronavirus/

[5] *Id.*

continues to practice social distancing, mask wearing, and sanitization, which the CDC recommends as effective practices to minimize one's risk to COVID-19. More than this, the BOP has been heroically undeterred in combatting the challenges of the COVID-19 pandemic. There is no evidence on this record that his medical conditions are either extraordinary or compelling reasons for release.

Third, federal sentencing factors militate against compassionate release. *See* 18 U.S.C. § 3553(a); *Cochran*, 833 F. Appx. at 9 (denying compassionate release for "a wheelchair-bound federal prisoner whose health ha[d] deteriorated over the years" when—in part—the § 3553(a) factors weighed against compassionate release). Law enforcement found Mr. O'Donnell with three other individuals in a hotel room with a combination of guns and drugs: a loaded Taurus handgun, approximately 120 grams of methamphetamine, and a gold-colored handgun inside his vehicle. *See* 18 U.S.C. §§ 3553(a)(1), (a)(2)(A). The charge required that he possess the firearms in furtherance of a drug trafficking crime, *see* 18 U.S.C. § 924(c)(1)(A)—a serious offense threatening the safety of the public and one markedly so because Congress has adopted a minimum sentence for it. *See* 18 U.S.C. §§ 3553(a)(1), (a)(2)(C).

Mr. O'Donnell dealt drugs daily as a middleman for a methamphetamine distributor; this wasn't a one-time incident. With three previous felonies, early release wouldn't promote just punishment, respect for the law, or deterrence. *See* 18 U.S.C. §§ 3553(a)(2)(A), (a)(2)(B). He benefitted from the government's decision to charge him with just this crime and the court's decision to sentence him at the statutory minimum; he could have faced additional charges and received a much longer sentence. This offense, with his prior history, doesn't support early release. Instead, the guideline sentence, as announced, continues to hold sway as reasonable. *See also* 18 U.S.C. § 3553(a)(6). In short, consideration of all § 3553(a) factors militate against compassionate release here.

Considering the federal sentencing factors, the COVID-19 precautions the BOP is taking, ongoing vaccinations, and the BOP's ability to care for inmates with similar medical conditions, the

4

court DENIES Mr. O'Donnell's request for compassionate release or to serve the remainder of his sentence in home confinement (ECF 34).

SO ORDERED.

April 1, 2021

*s/ Damon R. Leichty*
Judge, United States District Court